McGINLEY, Administratrix, Respondent, *v.* MARYLAND
CASUALTY COMPANY OF BALTIMORE, Appellant.

(No. 6,424.)

(Submitted April 2, 1929. Decided May 4, 1929.)

[277 Pac. 414.]

(1)

Mr. *E. C. Day* and Mr. *J. R. Wine,* for Appellant, submitted a brief; Mr. *Day* argued the cause orally.

4

*Mr. A. G. McNaught,* for Respondent, submitted a brief, and argued the cause orally.

MR. JUSTICE ANGSTMAN delivered the opinion of the court.

Plaintiff recovered judgment against defendant as surety upon the official bond of the sheriff of Musselshell county, and the defendant appealed.

From the undisputed facts ascertained from the pleadings and the evidence it appears that Lou McGinley, as administratrix of the estate of William A. McGinley, deceased, was, on January 7, 1924, the owner and in possession of certain livestock, hay, and corn fodder located on lands belonging to the deceased. This property was levied upon by the sheriff of Musselshell county under a writ of attachment issued in an action wherein John Oliver, as receiver for Citizens' State Bank of Roundup, was plaintiff, and Mrs. Lucretia McGinley was defendant. Plaintiff, as administratrix, filed a third-party claim and demanded the release of the attachment and the return of the property to her. This was refused, upon an indemnity bond being given to the sheriff by the receiver, and the hay and corn fodder were fed to the livestock then held by the sheriff under the attachment, and the sheriff collected the value thereof from the Citizens' State Bank and retains it. Later the livestock was sold under execution in the same action.

Subsequently this plaintiff commenced an action against the sheriff and Maryland Casualty Company, as surety on his official bond, to recover damages for the conversion of the livestock, hay, and corn fodder. The defendants in that action filed separate demurrers, each defendant being represented by the same attorney. A joint answer was subsequently filed by both defendants. That action was settled pursuant to a stipulation of the parties, which provided, among other things, that the receiver of the Citizens' State Bank of Roundup was to pay a stated amount to plaintiff "in full settlement of said action so far only as it concerns the sale of said cattle, * * * it being specifically understood that the settlement shall not

be in settlement for the hay and fodder, * * * and that the said plaintiff may effect settlement by action or otherwise for the property attached by the sheriff; * * * that the Citizens' State Bank or its receiver shall not be held responsible or liable for the property attached in said action by said sheriff, other than the said cattle, for which settlement is hereby made.'' An order of court was obtained, approving of the settlement and authorizing the receiver to pay to plaintiff the sum named in the stipulation.

Subsequently this action was brought against the same defendants to recover the value of the hay and corn fodder. Before trial the plaintiff voluntarily dismissed the action against the defendant sheriff. The cause was tried to the court sitting with a jury. At the conclusion of all of the evidence the court instructed the jury to return a verdict for plaintiff, leaving to the jury the question of the value of the hay and corn fodder. Defendant assigns error in the giving of that instruction, in denying defendant's motion for a directed verdict, and in entering judgment for plaintiff. The several assignments do not question the sufficiency of the evidence.

Defendant contends, first, that the record discloses that it did not specifically authorize its attorney to settle the first action brought by the plaintiff against these same defendants, and that, since that settlement released the Citizens' State Bank and its receiver from liability for the attached property, as a matter of law the sureties on the indemnity bond were released. In consequence, defendant contends that its rights have been prejudiced, because, it is contended, this defendant was entitled to the benefit of all security furnished to the sheriff to save him harmless for all official action.

In the view we take of the case it is unnecessary to determine whether defendant's attorney had authority to settle the action resulting in the release of the receiver and the sureties on the indemnity bond. If this defendant was prejudiced by that settlement, then, to that extent, it is exonerated. (Sec. 8201, Rev. Codes 1921.) And section 8207, Id., provides:

"A surety is entitled to the benefit of every security for the performance of the principal obligation held by the creditor." Before it can be said that this defendant was prejudiced by the settlement of that action, it must be ascertained whether under any circumstances it would have been entitled to resort to the sureties on the indemnity bond.

The indemnity bond was furnished pursuant to section 9273, Revised Codes of 1921, and was conditioned as follows: "Now, therefore, the condition of this obligation is such that if the said John Oliver, as receiver of the Citizens' State Bank of Roundup, Montana, a corporation, W. M. Ogle and August Schrump, their heirs, executors and administrators, shall well and truly indemnify and save harmless the said sheriff, his heirs, executors and administrators, of and from all damages, expenses, costs and charges, and against all loss and liability which he, the said sheriff, his heirs, executors, or administrators, shall sustain or in any wise be put to, not exceeding the sum of thirty-five hundred dollars ($3,500.00), for or by reason of the attachment, seizing, levying, taking or retention by the said sheriff in his custody, under said attachment, of the said property claimed as aforesaid, then the above obligation to be void; otherwise to remain in full force and effect."

The liability of a surety is fixed by the terms and conditions of the contract made by him, and may not be extended to matters not covered by the contract. (*Plymouth Gold Min. Co.* v. *United States F. & G. Co.*, 35 Mont. 23, 10 Ann. Cas. 951, 88 Pac. 565; *Downs* v. *American Surety Co.*, 132 Minn. 201, 156 N. W. 5.) As said by the court in *McDonald* v. *Fett*, 49 Cal. 354: "By the act of signing an attachment bond, the surety does not become a participant in the seizure or detention of the attached property by the sheriff, or liable as a trespasser for such acts. His liability arises under his contract, merely, and is limited by its terms and conditions."

And so it has been held that the sureties on an attachment bond are not liable for the wrongful conversion by the sheriff of an attached automobile belonging to someone other than

the attachment defendant. (*Summerland* v. *Automobile Funding Co.*, 84 Ind. App. 30, 148 N. E. 202.)

This action is not to recover damages by reason of the ██ "attachment, seizing, levying, taking or retention" of the property under the attachment. For the acts here complained of neither the sureties on the indemnity bond, nor their principal, the Citizens' State Bank or its receiver, could have been held responsible. This action is for the conversion of the attached property by the sheriff. The record discloses that the sheriff retained part of the proceeds from the sale of the cattle as expenses for hay and corn fodder. In effect, he sold the hay and corn fodder and has appropriated the proceeds to his own use. For that act the sureties on the indemnity bond and the receiver would not have been responsible.

An analogous case is that of *Dawson* v. *Baum*, 3 Wash. Ter. 464, 19 Pac. 46, where the court, in discussing certain assignments of error, said: "These go to the point as to whether these defendants, by merely signing the indemnity bond, are responsible for torts committed by the sheriff—for willful conversion of goods personally, and contrary to his duty as a sheriff making the levy. If the defendants assisted or directed this wrong, or by the signing of the bond such a wrong was advised, or could have been contemplated by the signers of the bond, then they ought to be liable for such a tort; but otherwise not. Had the sheriff burned the store, would the defendants have been liable therefor merely because they requested him to make a lawful levy? The sheriff and his bondsmen are alone responsible for tortious acts which did not come within the scope of defendants' advice." Of like import is the case of *Jordan* v. *Henderson*, 39 Tex. Civ. App. 89, 86 S. W. 961.

It follows that, since the sureties on the indemnity bond and their principal were in no way responsible for the acts of conversion of the sheriff, their release did not prejudice any right of the defendant here, for a surety is not exonerated by the relinquishment of security given for an independent

matter. (*Strother* v. *Wilkinson*, 90 Okl. 247, 216 Pac. 436; 32 Cyc. 217, note 90.)

Defendant also contends that plaintiff should not be permitted to split her cause of action. The rule against splitting a cause of action has for its object the prevention of more than one action arising out of one controversy, and thus to prevent vexatious litigation and expenses incident to numerous suits. (1 C. J. 1107.) The penalty for splitting a demand into separate causes of action is that a judgment upon the merits in the first suit is a bar to the others. (1 Cal. Jur. 369.) But under the facts appearing in this record there never has been a judgment on the merits obtained on the cause of action here pleaded.

The first action was settled in so far as concerns the livestock only. The court made an order approving the compromise and the action was dismissed pursuant to the stipulation of the parties. The answer in that action sought no affirmative relief. Plaintiff has the unquestioned right to dismiss an action when no counterclaim has been interposed or affirmative relief sought by the answer of the defendant. (Sec. 9317, Rev. Codes 1921; *Davenport* v. *Davenport*, 69 Mont. 405, 222 Pac. 422.)

A judgment of dismissal is not a bar to another action upon the same cause of action, unless it expressly states, or it is made apparent from the judgment-roll, that it is rendered upon the merits. (Sec. 9320, Rev. Codes 1921; *Glass* v. *Basin & Bay State Min. Co.*, 35 Mont. 567, 90 Pac. 753.)

The judgment of dismissal entered in the previous action was made in conformity with the stipulation, which expressly provided that it was not ''in settlement for the hay and fodder,'' and expressly reserved the right in plaintiff to ''effect settlement by action or otherwise'' for the hay and corn fodder.

''A judgment or decree which expressly excepts or reserves from its operation specified rights or claims of the parties in suit, or the decision of questions in issue, or the right to take further proceedings in respect to certain matters, is not a

bar to a subsequent action on the matters reserved." (34 C. J. 797; 15 Cal. Jur. 150.)

Defendant's attorney testified regarding the dismissal of the first cause of action, as follows: "It was specifically understood the agreement for settlement there was not a complete compromise, but a compromise only so far as the cattle were concerned, and that the feed would have to be looked after separately, if it was looked after at all; that was my understanding of it, upon which the action was then dismissed."

If the attorney for the defendant did not have authority to compromise the first action in the manner in which that settlement was made, as contended by it, and if defendant deemed itself prejudiced thereby, the remedy of defendant was to take proceedings to have the compromise set aside. If defendant has ratified the acts of its attorney, it will not be heard to complain, and slight evidence of acquiescence on the client's part will be deemed a ratification of the acts of the attorney in making the compromise. (Thornton on Attorneys at Law; p. 400, sec. 222.) These principles find recognition in the case of *Harris* v. *Root,* 28 Mont. 159, 72 Pac. 429, relied upon by defendant. Here the stipulation and dismissal took place in July, 1926. The defendant's answer in this case was filed in July, 1927, which shows knowledge at that time of the settlement, and, though this action was not tried until June, 1928, the record fails to show any affirmative action taken by the defendant to repudiate the settlement agreement. Such conduct on the part of the defendant is tantamount to a ratification of the settlement and dismissal of the former action.

Finding the several assignments of error without merit, the judgment is affirmed.

MR. CHIEF JUSTICE CALLAWAY and ASSOCIATE JUSTICES MATTHEWS, GALEN and FORD concur.

Rehearing denied May 22, 1929.